Zeuxis Ferriera NEVES, Plaintiff,

v.

Virginia L. RILEY, Defendant.

Civ. A. No. 76–209.

United States District Court, District of Columbia.

March 8, 1978.

Paul A. Kaplan, Robert H. Huey, Robert P. Bunn, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., for plaintiff.

J. Manning Lee, Virginia L. Riley, Pierson, Ball & Dowd, Washington, D.C., for defendant.

## FINDINGS OF FACT

AUBREY E. ROBINSON, Jr., District Judge.

1. Plaintiff, Zeuxis Ferriera Neves, is an adult citizen of Brazil. He has resided in the United States for more than twenty (20) years, serving as an attaché of the Brazilian Embassy.

2. Defendant, Virginia L. Riley, is the Collector of the Estate of Alda Lee Souza, who died intestate on September 20, 1975.

3. Alda Lee Souza's husband died in 1962. He was also an attaché of the Brazil-ian Embassy and a close associate of Plaintiff. Plaintiff and his wife, and Mr. and Mrs. Souza, were close personal friends. After Mr. Souza's death, Mrs. Souza and the Neveses remained friends.

4. Following her husband's death, Mrs. Souza behaved in a manner that led Mr. Neves and others to believe that she was in need of funds with which to support herself. On or about February 18, 1963, Mrs. Souza informed Plaintiff that she needed $2,000 and proposed that she sell all the tangible personal property in her home to him for that amount.

5. On February 19, 1963, Mr. Neves and Mrs. Souza went together to the Dupont Circle Branch of the Riggs National Bank. From a previously prepared draft which she had brought with her to the bank, Mrs. Souza wrote out and signed a Bill of Sale as follows:

Washington, D. C.
February 19, 1963
### BILL OF SALE

In consideration for the sum of Two Thousand Dollars ($2,000) I hereby sell and assign the entire contents of my house & garage, being located at 3532 Massachusetts Ave., N.W., Washington 7, D.C., to Zeuxis Ferreira Neves and/or Erna Marie Neves.

It is expressly understood this Bill of Sale shall include all furniture, rugs, china, crystal, mirrors, silver, curtains & rods, light fixtures, etc., including all other personal effects, such as jewelry and all other things not specifically stated.

ss Alda Lee Souza

City of Washington
District of Columbia

Subscribed and sworn to before me this 19th day of February, 1963
ss Donald I. Hamilton
Notary Public, D.C.

My Commission Expires September 14, 1963

6. Donald I. Hamilton, an officer of the bank and a business acquaintance of Plaintiff, notarized Mrs. Souza's signature on the Bill of Sale. Mr. Neves cashed a personal

check for $2,000 and, accompanied by Mr. Hamilton, went to the bank parking lot. Mr. Hamilton then witnessed Mr. Neves hand the cash to Mrs. Souza, who was seated in Mr. Neves' car.

7. There was an understanding between Mr. Neves and Mrs. Souza whereby Mr. Neves would permit Mrs. Souza to retain possession and use of the property, and to dispose of that property to others for the purpose of obtaining additional funds with which to provide for herself. Consistent with this understanding, Mrs. Souza sold several items which had been the subject of the Bill of Sale. She retained the proceeds of these sales, without accounting for them to Mr. Neves.

8. It was further understood between Mr. Neves and Mrs. Souza that Mr. Neves could at any time take possession of any item of property described in the Bill of Sale. Consistent with this understanding, Mr. Neves took possession of a painting during Mrs. Souza's lifetime. Mr. Neves also instructed Mrs. Souza not to dispose of a painting by Portinari, a Brazilian painter. The current whereabouts of that painting is unknown. There is no evidence that it was either placed in storage, as Mr. Neves had been informed by Mrs. Souza upon his inquiry, or sold.

9. At no time prior to Mrs. Souza's death was there any inventory of the property described in the Bill of Sale by either Mr. Neves or Mrs. Souza.

10. Mr. Neves and Mrs. Souza entered into a separate transaction, unknown to anyone else, in March of 1963. Mr. Neves purchased Mrs. Souza's 1954 station wagon for $600 in cash. Title to the car was transferred to Mr. Neves, but the car was available for use by both Mr. Neves and Mrs. Souza. When not in use, the car was kept at the rear of Mrs. Souza's home, just as it had been prior to the sale.

11. Mrs. Souza had executed a will, dated February 18, 1963, leaving all of her personalty to Mr. and Mrs. Neves. She revoked that will on January 19, 1971. Subsequent to Mrs. Souza's death, Plaintiff and Defendant discovered among her effects a notarized carbon copy of the Bill of Sale, together with a pencilled draft of an unexecuted will which named the Neveses beneficiaries of Mrs. Souza's personalty.

12. Plaintiff identified numerous items on the Superior Court Inventory of Appraised Personal Estate which he remembers being in the Souza home as of February 19, 1963. Many other items on the inventory he could not recollect nor identify. There is no evidence of any purchases of personalty made by Mrs. Souza subsequent to February 19, 1963.

## CONCLUSIONS OF LAW

1. The language of the Bill of Sale is plain and unambiguous, and the contract is valid and binding.

2. The delivery of the Bill of Sale, upon payment of the $2,000 consideration noted therein, consummated the sale and has the legal effect of transferring title of the subject property to Mr. Neves on the date of such delivery, February 19, 1963. The subject property was clearly ascertained as of that date.

3. The parties intended the physical delivery of the subject property to Mr. Neves to be on demand, implied in and consistent with the written contract.

4. This cause of action accrued only upon Defendant Riley's refusal to relinquish possession of the subject property to Mr. Neves after Mrs. Souza's death and is not barred by 12 D.C.Code § 301(2), the applicable statute of limitations.

5. The course of conduct between the parties, subsequent to the completion of the written contract of sale, does not invalidate the sale. That Mr. Neves gratuitously permitted Mrs. Souza to continue possession and use of the subject property, and to dispose of that property to others for the purpose of obtaining additional funds with which to provide for herself, until such time as he demanded possession, in no way undermines, and is consistent with, the written Bill of Sale.

6. Any argument that the contract of sale is unconscionable is totally without merit. *Williams v. Walker-Thomas Furniture Co.*, 121 U.S.App.D.C. 315, 319, 350 F.2d 445, 449 (1965), sets out a two-pronged test to determine unconscionability: absence of meaningful choice on the part of one party, and unreasonably favorable terms to the other party. Neither portion of this test is satisfied in this case.

7. Defendant's reliance upon 28 D.C. Code § 3103, and upon 14 D.C.Code § 302, is misplaced. These matters have previously been examined in detail and were determined in the Order of this Court dated November 4, 1977.

8. Plaintiff is entitled to all of the contents of Mrs. Souza's house and garage at the time of her death, not only those items which Plaintiff could specifically recall as being in the Souza home as of February 19, 1963. Mr. Neves was not legally required to inventory the goods purchased at the time the Bill of Sale was entered and became effective. Defendant failed to show that Mrs. Souza obtained any items found in her home at her death subsequent to the February 19, 1963, sale. This conclusion is consistent with Mrs. Souza's continuous representations that she was in need of funds to support herself, and the sales of her car and certain items from her home.

9. The Court must, therefore, in an appropriate order accompanying these findings of fact and conclusions of law, grant Plaintiff's prayer for a declaratory judgment declaring his rights in all the property inventoried as being in Mrs. Souza's home at the time of her death, order the immediate delivery of all such property to Plaintiff, and award costs of this action to Plaintiff.